UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

JOEL S. POLANCO,

and

MAURICIO A. BALBUENA JIMINEZ

     Plaintiffs,                                     Case No. 25-CV-2410 (LJL)

-against-

                                               AMENDED
                                               COMPLAINT

                                               Jury Demanded

SPARTAN AUTO GROUP, LLC
d/b/a VICTORY MITSUBISHI

and

CAPITAL ONE, NATIONAL ASSOCIATION
d/b/a Capital One Auto Finance

and

Chris Orsaris,
Mark Vanable,
Jamal Mohammad, Tazman Nelson, John Doe 4, and John Doe 5,

     Defendants.
_____x


## Introduction

1.      This is a suit brought by two consumers, Joel S. Polanco and Mauricio A.

Balbuena Jiminez, against an automobile dealership, Spartan Auto Group, LLC d/b/a Victory

Mitsubishi ("Victory Mitsubishi"), that sold them a motor vehicle with a loan agreement, which

they assigned to Capital One Auto Finance. Despite the fact that a deal was consummated and

completed on March 27, 2024, Victory Mitsubishi continued to access and shop Plaintiff's credit

profile without authority and without any permissible purpose on numerous occasions into April 2024. Then in May 2024, Victory Mitsubishi unlawfully seized Plaintiffs' vehicle and has attempted to sell it to third-parties, without authority and in a non-commercially reasonable manner. Plaintiffs assert claims under the Truth-in-Lending Act ("TILA"), the Fair Credit Reporting Act ("FCRA"), and the Equal Credit Opportunity Act ("ECOA"), and further asserts state-law claims for declaratory relief and for common-law fraud, conversion, violations of the Uniform Commercial Code, and violations of New York General Business Law § 349.

**Parties**

2.      Plaintiff Polanco is a resident of New York, New York.

3.      Plaintiff Jiminez is a resident of New York, New York.

4.      Defendant Victory Mitsubishi is a New York limited liability company with its principal place of business, a car dealership, located at 4070 Boston Road, Bronx, New York 10475.

5.      Defendant Chris Orsaris is the owner and chief executive officer of Defendant Victory Mitsubishi and has a principal place of employment at 4070 Boston Road, Bronx, New York 10475.

6.      Defendant Orsaris' actions described herein were undertaken both in his capacity as agent for Defendant Victory Mitsubishi and in his individual capacity.

7.      Mark Vanable, was, at all times relevant hereto, an employee and agent of Defendant Victory Mitsubishi.

8.      Vanable's actions described herein were undertaken both in his capacity as agent for Defendant Victory Mitsubishi and in his individual capacity.

9.      Jamal Mohammad, whose Instagram is believed to be Jay Milly, and whose email

address is believed to be jaymilly822@gmail.com, was, at all times relevant hereto, an employee and agent of Defendant Victory Mitsubishi.

10.     Mohammad's actions described herein were undertaken both in his capacity as agent for Defendant Victory Mitsubishi and in his individual capacity.

11.     Tazman Nelson was, at all times relevant hereto, an employee and agent of Defendant Victory Mitsubishi, whose photograph Polanco has downloaded from Victory Mitsubishi's website and a copy of which is attached as Exhibit 1.

12.     Nelson's actions described herein were undertaken both in his capacity as agent for Defendant Victory Mitsubishi and in his individual capacity.

13.     John Doe 4, whose name is unknown, was, at all times relevant hereto, an employee and agent of Defendant Victory Mitsubishi, who used a cell number of 917-861-0946 to communicate by text with Polanco.

14.     John Doe 4's actions described herein were undertaken both in his capacity as agent for Defendant Victory Mitsubishi and in his individual capacity.

15.     John Doe 5, whose name is unknown, was, at all times relevant hereto, an employee and agent of Defendant Victory Mitsubishi.

16.     John Doe 5's actions described herein were undertaken both in his capacity as agent for Defendant Victory Mitsubishi and in his individual capacity, who used a cell number of 347-593-4394 to communicate by text with Polanco.

17.John Doe 6, whose name is unknown, was, at all times relevant hereto, an employee and agent of Defendant Victory Mitsubishi, who used a cell number of 929-343-1761 to communicate by text with Polanco.

18.     John Doe 6's actions described herein were undertaken both in his capacity as

agent for Defendant Victory Mitsubishi and in his individual capacity.

19.     Capital One, National Association d/b/a Capital One Auto Finance ("Capital One") is a National Bank, with its principal place of business at 1680 Capital One Drive, McLean, Virginia 22102-3491, and is a "user" as governed by the FCRA.

## Jurisdiction and Venue

20.     This court has federal question jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 1640, 15 U.S.C. § 1681n, 15 U.S.C. § 1681o, and 15 U.S.C. § 1691e.

21.     This Court has supplemental jurisdiction under 28 U.S.C § 1367(a).

22.     This court has jurisdiction over the Defendant Victory Mitsubishi because it is a resident of New York.

23.     This court has jurisdiction over the Defendants Orsaris, Vanable, Mohammad, Nelson, John Doe 4, and John Doe because they transact business in New York.

24.     More particularly, as detailed below, together with Defendants committed unlawful acts against Plaintiffs within the State of New York.

25.     Venue is proper in this district under 28 U.S.C. § 1391(b), as the acts and transactions that gave rise to this action occurred, in substantial part, in this district.

26.     Venue is also proper in this district because the defendants transact business in this district and the interests of justice require maintenance of this action in this district.

27.     This court has jurisdiction over the Defendant Capital One, because it does and transacts business in the State of New York and is authorized to do business in New York.

## Facts

28.     In March 2024, Plaintiff Polanco was looking for a car to purchase.

29.     Plaintiff Polanco therefore searched the internet for cars which met his needs.

30.     On March 26, 2024, Plaintiff Polanco found a car advertised online by Victory Mitsubishi for a sales price of $9,000, and filled out a credit application through Victory Mitsubishi's online portal.

31.     The next morning, Plaintiff Polanco filled out the credit application, Victory Mitsubishi called him and told him he was pre-approved, and that he needed $3,000 as a down payment for the vehicle he was looking at.

32.     Victory Mitsubishi followed the telephone call up with an email to Plaintiff Polanco, confirming that the application has been processed. A copy of the email is attached as Exhibit 2.

33.     Later that day, on March 27, 2024, Plaintiff Polanco traveled from his home at the time in New Paltz, New York, to Victory Mitsubishi's dealership, a distance of approximately 85 miles each way.

34.     When Plaintiff Polanco arrived at the dealership, Mohammad, the sales agent for Victory Mitsubishi, told him that the car he had looked at was in the shop getting repaired, and then showed him a 2020 BMW 3 Series ("the car" or "the vehicle"), which was listed for sale for $26,000.

35.     Plaintiff Polanco allowed himself to be "switched" to the new vehicle since he had already taken the "bait" and traveled 85 miles to buy the car he had originally wanted – after traveling all that way, he did not want to leave empty handed, precisely as Victory Mitsubishi and its sales force had planned.

36.     Nelson told Plaintiff Polanco that he had to re-apply for credit approval, and that he needed more money as a down payment, and would need a co-signor.

37.     Unknown to Plaintiff Polanco at the time, Victory Mitsubishi had not accessed his

credit profile when he filled out the online credit application, and when they told him he was pre-approved for credit. Instead, they falsely told him he was pre-approved for credit to purchase the $9,000 car he had looked at and for which he had applied for credit.

38.     On information and belief, the $9,000 car Plaintiff Polanco had looked at and applied for credit for was not in fact available for sale, and Victory Mitsubishi was using that car and the pretextual pre approval of credit as "bait" to lure Plaintiff Polanco in to the dealership, with the intention of "switching" the vehicle to a more expensive vehicle for sale.

39.     On March 27, 2024, Victory Mitsubishi did in fact access Plaintiff Polanco's credit report.

40.     On March 27, 2024, Victory Mitsubishi told Plaintiff Polanco he needed a co-signor to be approved for the loan, and that he also needed a larger down payment.

41.     After being fully informed of Plaintiffs' credit history and knowing its own standards for credit, Victory Mitsubishi wrote a Retail Installment Sales Contract ("RISC") and related documents in connection with the sale of the vehicle to Plaintiffs.

42.     Victory Mitsubishi told Plaintiffs they were approved for financing, and sold the vehicle to them. A copy of the Financing Disclosure - Sale of Used Car is attached as Exhibit 3.

43.     Victory Mitsubishi did not give Plaintiffs a copy of Exhibit 3, the RISC, or any of the other deal documents they signed that day.

44.     Victory Mitsubishi told Plaintiffs they would email all of the deal documents to them the next day.

45.      Victory Mitsubishi registered the vehicle in Plaintiff's name, listing Capital One as the lien holder, with the New York Department of Motor Vehicles. A copy of the Application for Certification of Ownership is attached hereto as Exhibit 4.

46.     Previous to and in connection with the sales transaction, Victory Mitsubishi obtained an extension of credit for Plaintiffs, provided Plaintiffs advice or assistance in connection with an extension of credit, *to wit*, the Retail Installment Sales Contract.

47.     Subsequent to selling the vehicle to Plaintiffs, Defendants Victory Mitsubishi sold and assigned their interest in the RISC to Capital.

48.     The transaction was final on March 27, 2024 when Plaintiffs agreed to the terms of the sale, signed the paperwork reflecting those terms, received possession of the vehicle, and when Victory Mitsubishi processed the registration of the vehicle into Plaintiffs' names with Capital One as the lienholder.

49.     After assigning their interest in the RISC to Capital One, Victory Mitsubishi did not send additional required documentation to Capital One which Capital One required in order to finalize the assignment of Victory Mitsubishi's interest in the RISC to them.

50.     Capital One thus revoked its acceptance of the March 27, 2024 assignment of the RISC from Victory Mitsubishi and required Victory Mitsubishi to buy the loan back from them.

51.     Capital One's revocation of its acceptance of the assignment of the RISC from Victory Mitsubishi did not affect the validity of the sale from Victory Mitsubishi to Plaintiffs— instead, it was a separate, albeit related, transaction between Victory Mitsubishi and Capital One.

52.     Despite the sale having been financed and finalized on March 27, 2024, on or about April 29, 2024, Victory Mitsubishi accessed Plaintiff Polanco's consumer credit reports from Trans Union, Experian and Equifax.

53.     Also, on or about April 29, 2024, Defendant Victory Mitsubishi, submitted a request to Capital One for Capital One to access Plaintiff Polanco's consumer credit reports from Experian, Equifax and Trans Union.

54. Pursuant to Victory Mitsubishi's request on April 29, 2024, Capital One accessed a copy of Plaintiff Polanco's Consumer Report from Equifax, Experian and Trans Union.

55. On May 3, 2024, Plaintiff Polanco's consumer credit report, containing the record of the April 29, 2024 hard inquiry from Capital One, was disseminated to Bank of America.

56. On August 6, 2024, Plaintiff Polanco's consumer credit report, containing the record of the April 29, 2024 hard inquiry from Capital One, was disseminated to SYNCB/Amazon PLCC.

57. On October 2, 2024, Plaintiff Polanco's consumer credit report, containing the record of the April 29, 2024 hard inquiry from Capital One, was disseminated to Citibank, NA, Best Buy.

58. In addition, since April 29, 2024, there have been numerous "soft inquiries" into Plaintiff Polanco's consumer credit report. It is believed that some, if not all of these "soft inquiries" have resulted in the dissemination of the record of the April 29, 2024 hard inquiry from Capital One. A "soft inquiry" is an inquiry that does not impact a consumer's credit rating, but does result in at least a partial dissemination of a consumer's credit report and history. There have been over 100 "soft inquiries" since April 29, 2024 that resulted in the dissemination of Plaintiff Polanco's consumer credit report.

59. On information and belief, Victory Mitsubishi's request to Capital One for Plaintiff Polanco's Consumer Reports was made pursuant to a contractual agreement with Capital One. On information and belief, in that contractual agreement, Victory Mitsubishi agreed that it would only request a Consumer Report for a permissible purpose under the Fair Credit Reporting Act, and only in connection with a credit transaction and for no other purpose.

60. In April 2024, Victory Mitsubishi lacked any permissible purpose for accessing

Plaintiff Polanco's consumer credit reports.

61.     In April, 2024, Victory Mitsubishi did not have authority to access Plaintiff Polanco's consumer credit reports.

62.     In April 2024, Victory Mitsubishi did not have any outstanding credit transactions with Plaintiff Polanco.

63.     Neither Victory Mitsubishi nor Capital One provided Plaintiffs with any notice of adverse action related to the March 27, 2024 credit-inquiries.

64.     Neither Victory Mitsubishi nor Capital One provided Plaintiffs with any notice of adverse action related to the April 29, 2024 credit-inquiries.

65.     On or about May 14, 2024, Plaintiff Polanco obtained and reviewed a copy of his Equifax, Experian and Trans Union credit reports. He was shocked to see that he had numerous credit inquiries from companies from which he had not sought credit for any reason. He was also shocked to see that he had credit inquiries from both Capital One, AmeriCredit Finance, Regional Acceptance, and Victory Mitsubishi a month after he had already been approved for financing through them.

66.     The credit inquiries into Plaintiff Polanco's credit profile a month apart lowers his credit score", counting as two separate credit inquiries.

67.     Plaintiff Polanco had not contacted any of the Defendants that submitted applications on his behalf after March 27, 2024, much less given his permission to obtain his credit reports to secure any type of financing on his behalf after the March 27, 2024 transaction was completed.

68.     On or about April 1, 2024, Victory Mitsubishi, by and through Vanable, started contacting Plaintiff Polanco, demanding that he sign new deal documents, or they would

repossess the car.

69.     Victory Mitsubishi then began demanding that Plaintiff Polanco return the car, even though he had a valid and binding purchase agreement.

70.     On April 26, 2024, Victory Mitsubishi, by and through Vanable, threatened to report the car as stolen if Plaintiff Polanco did not return the car by the next day.

71.     On April 29, 2024, Plaintiff Polanco sent, via text a letter to Victory Mitsubishi advising them that they had no right to repossess the car, and that he would continue to honor his obligations under the RISC.  Plaintiff Polanco further warned Victory Mitsubishi against engaging in a "yo-yo" financing scam.  A copy of the April 29, 2024 letter is attached as Exhibit 5.

72.     On April 30, 2024, Victory Mitsubishi again texted Plaintiff Polanco threatening to repossess the vehicle, and falsely claiming that the "bank declined the loan".

73.     In actuality, the RISC had been approved by Victory Mitsubishi on March 27, 2024. In March, 2024, Capital One had declined to accept Victory Mitsubishi's attempt to assign the loan to them, but Capital One did not "decline the loan", as that loan had already been issued from Victory Mitsubishi to Plaintiffs on March 27, 2024.

74.     On April 30, 2024, Plaintiff Polanco advised Defendants that they were not allowed on his property.

75.     Plaintiff Polanco asked Victory Mitsubishi to whom he should make the RISC payments.

76.     In response, Victory Mitsubishi and John Doe 4, with Vanable , copied on the texts, told Plaintiffs not to make the payments, and insisted that no loan had been finalized. They insisted "We are not a bank, we are a car dealership" and "We do not extend financing" and "Is

no one to make payments to".

77.    At a loss as to who to make his first payment to after Victory Mitsubishi specifically told him that there is no one to make payments to, Plaintiffs did not make the first loan payment on the RISC.

78.    Almost immediately thereafter, Victory Mitsubishi and John Doe 5 texted Plaintiff Polanco and stated "you missed your first payment".

79.    Plaintiff Polanco immediately responded that he had been waiting for them to tell him who to make the payment to.

80.    Victory Mitsubishi and Vanable and John Doe 4 still refused to tell Plaintiffs to whom to make the payment, and instead Victory Mitsubishi and an unknown agent of Defendants—John Doe 5—threatened that a complaint had been drafted and uploaded in the NYS State Supreme Court docket, against both Plaintiffs.  Victory Mitsubishi and an unknown agent of Defendants—John Doe 5—told Plaintiff Polanco that he needed to "cooperate" with them by filling out new deal documents, and that if they received any answer other than "I will be there today to work this out", they would begin court proceedings.

81.    In fact, no such complaint had been uploaded to the NYS State Supreme Court docket.

82.    On May 9, 2024, Victory Mitsubishi and Orsaris sent Plaintiffs a letter acknowledging that the car had been sold to Plaintiffs and that the financing was finalized.  A copy of the May 9, 2024 letter is attached as Exhibit 6.

83.    In the letter, Victory Mitsubishi and Orsaris claimed to attach a copy of the RISC, but did not in fact attach a copy.

84.    Further, in the letter, Victory Mitsubishi and Orsaris claimed that Plaintiffs had

breached the RISC by failing to make the first payment, despite the fact that they had specifically told Plaintiffs that there was no one to make the payment to.

85.     Further, in the letter, Victory Mitsubishi and Orsaris gave Plaintiffs until May 20, 2024 to cure the missed payment.

86.     On May 15, 2024, in the wee hours of the morning, Defendants Victory Mitsubishi and Orsaris and John Doe 4 caused the vehicle to be seized from Plaintiff Polanco's property.

87.     Orsaris gave agents of Victory Mitsubishi the instruction to seize the vehicle from Plaintiffs.

88.     On May 15, 2024, Defendants Victory Mitsubishi, Orsaris, Vanable, Mohammad, Nelson, John Doe 4, and John Doe 5 had no present right or authority to repossess the vehicle, nor did they at any time. This is both due to the fact that Victory Mitsubishi had expressly refused Plaintiffs attempts to pay the loan prior to the first payment coming due, as described above, and due to the fact that Victory Mitsubishi and Orsaris had given Plaintiff until May 20, 2024 to cure any default due to the missed payment.

89.     When Defendants Victory Mitsubishi, Orsaris, Vanable, Mohammad, Nelson, John Doe 4, and John Doe 5 seized the vehicle, Plaintiff Polanco had personal property in the vehicle, including a graduation cap, gown, and honor roll cord; an expensive Apple Headphone set, and other personal belongings.

90.     On May 15, 2024, when Plaintiff Polanco discovered the car had been seized, he immediately contacted Defendants Victory Mitsubishi, Orsaris, Vanable, John Doe 4, and John Doe 5 via the same text numbers from which they had been texting him.

91.     Plaintiff Polanco advised Defendants Victory Mitsubishi and Orsaris, Vanable,

John Doe 4, and John Doe 5 that Plaintiff had belongings in the car, and the time sensitive need to retrieve the personal belongings, as his friend's graduation was just days away. A copy of the text is attached as Exhibit 7.

92.     In response, Defendant John Doe 4 texted back "I don't know who you are and what you talking about".

93.     Defendants Victory Mitsubishi and Orsaris then had John Doe 6 text Plaintiff Polanco and tell him that he could have his personal property back only if he turned in his key fob for the vehicle in exchange for the personal property.

94.     Defendants Victory Mitsubishi and Orsaris further told Plaintiff Polanco by text sent by John Doe 6 that they did not have the car and had not repossessed the car, but instead the bank had repossessed the car and had it at an unknown or undisclosed location in Upstate New York.

95.     At the time Defendants Victory Mitsubishi and Orsaris statements, Plaintiff Polanco was able to see the location of his Apple Headset from his phone. The Apple Headset, which had been in the car at the time Victory Mitsubishi, Orsaris, Vanable, Mohammad and Nelson seized it, was at Victory Mitsubishi's lot located at 4070 Boston Road, Bronx, New York 10475.

96.     In order to retrieve the personal property, Plaintiff Polanco told Victory Mitsubishi that he would have someone drop off the key fob, but that doing so would not waive any claims he had related to the transaction and the unlawful taking of the car.

97.     In response, Victory Mitsubishi and Orsaris had John Doe 5 text Plaintiff  Polanco back that "you are being served shortly for fraud".

98.     Despite seizing the vehicle purportedly pursuant to a UCC security interest,

Victory Mitsubishi has failed to provide Plaintiff Polanco with a notice of his right to redeem the vehicle or notice of sale for the vehicle. Instead, the vehicle has languished for almost two months as of the filing of this lawsuit, depreciating in value as time drags on.

99. Victory Mitsubishi has thus taken the vehicle for its own use, and disposed of the vehicle for $0.00.

100. Under § 78.22 of the Regulations, within 24 hours of the repossession, Victory Mitsubishi was required to give notice of the repossession to Plaintiffs either personally or by registered mail and to notify the local law-enforcement agency—Victory Mitsubishi did none of this.

101. Prior to taking the vehicle for its own use, Victory Mitsubishi did not send Plaintiffs a notice of their right to redeem the vehicle, or of its intent to sell the vehicle, as required by NY UCC §§ 9-611, 9-614, and 9-623, and NY Personal Property Law § 316.

102. Plaintiffs are not the only victims of Victory Mitsubishi, Orsaris, Vanable, Mohammad, Nelson, John Doe 4, John Doe 5, and John Doe 6's fraudulent-and-deceptive conduct.

103. As set forth above, Defendants Victory Mitsubishi, Orsaris, Vanable, Mohammad, Nelson, John Doe 4, John Doe 5, and John Doe 6 actively, willfully, intentionally, and personally participated in the unlawful actions taken against Plaintiffs.

## Count I
## Truth in Lending Act Violations by Victory Mitsubishi

104. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

105. Victory Mitsubishi is a creditor as defined by TILA, 15 U.S.C. § 1601, *et seq*.

106. Plaintiffs are consumers as defined by TILA, 15 U.S.C. § 1601, *et seq*.

14

107.     Victory Mitsubishi failed to provide the disclosures required under TILA, 15 U.S.C. § 1601, *et seq*.

108.     Victory Mitsubishi violated TILA in one or more of the following ways, by example only, and without limitation:

   a.     By failing to accurately state the legal obligation between the parties at the time of disclosure;

   b.     By failing to accurately provide the finance charge, the total of payments, the total sales price, or the timing, of payments;

   c.     By failing to accurately reflect the down payment and credits, including the non-existence of the trade in vehicle; and

   d.     By inaccurately stating the APR and the total finance charge.

109.     As a result of the above, Victory Mitsubishi has not provided accurate and complete disclosures as required by the Truth in Lending Act.

110.     In connection with the financing referenced above, Victory Mitsubishi failed to provide a copy of the finance terms prior to the consummation of the sale or the loan.

111.     As a result of the above, Victory Mitsubishi has breached the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and is liable to Plaintiff for actual and statutory damages pursuant to the Act.

## Count II

### Violations of 15 U.S.C. § 1681b(f)
### by Victory Mitsubishi and Capital One

112.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

113.     Under § 1681b(f), a person, including a corporation, may not use or obtain a

consumer report for unauthorized purposes.

114.    In April 2024, Defendants Victory Mitsubishi and Capital One each violated 15 U.S.C. §1681b(f) by obtaining and using the Plaintiff Polanco's consumer reports without a permissible purpose to do so.  Any permissible purpose they may have had from the March 2024 credit pull had expired when the credit was approved and the loan extended.

115.    Defendants Victory Mitsubishi and Capital One each violated 15 U.S.C. §1681b(f) by failing to accurately and lawfully certify a permissible purpose to consumer reporting agencies.

116.    As a result of Defendants Victory Mitsubishi and Capital One's conduct, Plaintiff Polanco suffered actual damages including, without limitation, credit damage related to each impermissible pull, violation of privacy, and other emotional and mental distress.

117.    Defendants Victory Mitsubishi and Capital One knew or should have known that there was no permissible purpose to obtain Plaintiff Polanco's credit report.

118.    Victory Mitsubishi and Capital One in particular knew that there was already an approved loan for the vehicle from the March 27, 2024 transaction, and that the credit pulls in April were without any permissible purpose.

119.    For its willful violation of the FCRA, Defendants Victory Mitsubishi and Capital One are liable to Plaintiff Polanco for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendants Victory Mitsubishi and Capital One were negligent, entitling the Plaintiff Polanco to recovery under 15 U.S.C. §1681o.

120.     Plaintiff Polanco is entitled to recover actual damages, statutory damages, costs and attorney fees from Defendants Victory Mitsubishi and Capital One in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## Count III

### Violation of 15 U.S.C. §1681m
### by Victory Mitsubishi and Capital One

121.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

122. This Count is in the alternative to the Counts and claims that the Defendants extended finalized financing for this transaction.

123. Defendant Victory Mitsubishi has claimed that it did not finalize the financing and that the loan was never in effect.

124.     Defendant Victory Mitsubishi did not provide financing on the terms represented and agreed upon with Plaintiffs.

125.     Defendants Victory Mitsubishi and Capital One did not provide financing or any denial of financing to Plaintiffs after their March credit pulls.

126.     Defendant Victory Mitsubishi 's failure to extend credit in accordance with the agreed-upon terms was an "adverse action" within the meaning of the FCRA, 15 U.S.C. § 1681a(k).

127.     Defendant Victory Mitsubishi failed to provide the notice of adverse action required by the FCRA, 5 U.S.C. § 1681m.

128.     Defendant Victory Mitsubishi violated 15 U.S.C. §1681m(2) and (3) by failing to provide the required notice information to the Plaintiffs.

129.     As a result of Defendants Victory Mitsubishi's conduct, the Plaintiffs suffered actual damages, including, without limitation, credit damage, violation of privacy, and other emotional and mental distress.

130.     Defendant Victory Mitsubishi's actions were willful, rendering the Defendant

individually liable for punitive damages in the amount to be determined by the court pursuant to 15 U.S.C. §1681n.

131.    In the event that the FCRA violation is determined to be negligent rather than willful, Defendant Victory Mitsubishi is liable to Plaintiffs for their actual damages and reasonable attorney fees under 15 U.S.C. § 1681o.

132.    Plaintiffs are entitled to recover actual damages, statutory damages, costs and attorney fees from Defendant Victory Mitsubishi in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

**Count IV**

**Violation of 15 U.S.C. § 1691(d)(2)**
**by Victory Mitsubishi**

133.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

134.This Count is in the alternative to the Counts and claims that the Defendants extended finalized financing for this transaction.

135.Defendant Victory Mitsubishi has claimed that it did not finalize the financing and that the loan was never in effect.

136.    Defendant Victory Mitsubishi's failure to extend credit in accordance with the agreed upon terms was an "adverse action" within the meaning of ECOA, 15 U.S.C. § 1691(d).

137.    Defendant Victory Mitsubishi's failure to extend credit after their March and April credit pulls was an "adverse action" within the meaning of ECOA, 15 U.S.C. § 1691(d).

138.    Defendant Victory Mitsubishi failed to provide the notice of adverse action required by ECOA, 15 U.S.C. § 1691(d)(2).

139.    For its violations of ECOA, Defendant Victory Mitsubishi is liable to Plaintiffs

18

for actual damages, punitive damages of up to $10,000, and reasonable attorney fees under 15 U.S.C. § 1691e.

**Count V**

**Common Law Fraud Violations**
**against Victory Mitsubishi, Orsaris, Mohammad, and Nelson**

140.    Plaintiffs restate, reallege, and incorporate by reference all foregoing paragraphs as if set forth fully in this Cause of Action.

141.    Victory Mitsubishi, by and through its agents, including but not limited to Orsaris, Mohammad, and Nelson, intentionally, recklessly and/or negligently made misrepresentations to Plaintiff Polanco regarding the availability of the advertised car, and the amount Plaintiffs would be financing to purchase the car.

142.    In addition, Victory Mitsubishi, by and through its agents, including but not limited to Victory Mitsubishi, Orsaris, Mohammad and Nelson intentionally, recklessly and/or negligently engaged in bait and switch advertising, falsely claiming that the advertised car was available and that Plaintiff Polanco was approved for financing for the advertised car, only to pull the rug from under Plaintiff Polanco when he traveled across the state to get to the dealership to purchase the advertised car.  Once he was there, Victory Mitsubishi, Orsaris and Mohammad "switched" the available vehicle to one 3 times as expensive and required a larger down payment, all as set forth above.

143.    Without Victory Mitsubishi, Orsaris, Mohammad and Nelson's false representations, Plaintiffs would not have purchased the vehicle.

144.    Plaintiffs have been actually damaged by Victory Mitsubishi, Orsaris, Mohammad and Nelson's false representations by being switched into a vehicle 3 times as expensive as the bait vehicle, incurring substantial greater debt, and subsequently losing his

down payment and incurring credit damage and anxiety, distress and inconvenience damages.

145.     Plaintiffs relied on Victory Mitsubishi, Orsaris, Mohammad and Nelson's misrepresentations and was induced to purchase the aforementioned automobile.

146.     The Defendants' (Victory Mitsubishi, Orsaris, Mohammad and John Doe) actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

**Count VI**

**Conversion**
**As to Victory Mitsubishi and Orsaris,** Vanable, **John Doe 4, John Doe 5 and John Doe 6**

147.     Plaintiffs restate, reallege, and incorporate by reference all foregoing paragraphs as if set forth fully in this Cause of Action.

148.     At the time Victory Mitsubishi, Orsaris, Vanable, John Doe 4, John Doe 5 and John Doe 6 took possession of the vehicle from Plaintiffs, they lacked any right of possession to the vehicle.

149.     Victory Mitsubishi, Orsaris, Vanable, John Doe 4, John Doe 5 and John Doe 6's taking of the vehicle was a conversion of Plaintiffs' property interest.

150.     Victory Mitsubishi, Orsaris, Vanable, John Doe 4, John Doe 5 and John Doe 6 knew they lacked any right or authority to take the vehicle.

151.     Plaintiffs had personal property in the vehicle at the time Victory Mitsubishi, Orsaris, Vanable, John Doe 4, John Doe 5 and John Doe 6took it.

152.     Despite repeated demands, Victory Mitsubishi, Orsaris Vanable, John Doe 4, John Doe 5 and John Doe 6 did not return Plaintiffs' personal property, resulting in significant inconvenience, stress, and aggravation as well as the loss of the property itself.

153.     Victory Mitsubishi, Orsaris, Vanable, John Doe 4, John Doe 5 and John Doe 6

still have not returned the vehicle they wrongfully seized.

154.     Plaintiffs have been damaged by Victory Mitsubishi Orsaris, Vanable, John Doe 4, John Doe 5 and John Doe 6's conversion of their property.

155.     Victory Mitsubishi, Orsaris, Vanable, John Doe 4, John Doe 5 and John Doe 6's actions described herein were taken with wanton, willful, intentional and reckless disregard for Plaintiffs' rights.

### Count VII – Uniform Commercial Code
### As to Victory Mitsubishi only

156.     Plaintiffs restate, reallege and incorporate by reference all foregoing paragraphs as if set forth fully in this Cause of Action.

157.     Defendant Victory Mitsubishi seized the vehicle under a claim that Plaintiffs were in default of the RISC.

158.     Defendant Victory Mitsubishi thus had an obligation to dispose of the vehicle in a commercially reasonable manner, pursuant to UCC §9-610.

159.     Defendant Victory Mitsubishi also had an obligation to notify Plaintiffs, at least 10 days before attempting to resell the vehicle, of his right to redeem the property and other information as set forth in UCC §§9-611 through 614.

160.     Defendant Victory Mitsubishi did not send Plaintiffs the required notices 10 days before attempting to resell the vehicle.

161.     As a result of its failure to provide the required statutory notices, Defendant Victory Mitsubishi is obligated to Plaintiffs for 10% of the purchase price of the vehicle plus all finance charges on the RISC, pursuant to UCC §9-625.


### COUNT VIII

## New York Uniform Commercial Code
## by Victory Mitsubishi

162.    Plaintiffs restates, realleges, and incorporates by reference all foregoing paragraphs as if set forth fully in this Cause of Action.

163.    Victory Mitsubishi seized the vehicle under a claim that Plaintiffs were in default of the RISC.

164.    Victory Mitsubishi thus had an obligation to dispose of the vehicle in a commercially reasonable manner, pursuant to NY UCC § 9-610.

165.    Victory Mitsubishi also had an obligation to notify Plaintiffs, at least 10 days before attempting to resell the vehicle, of his right to redeem the property and other information as set forth in NY UCC §§ 9-611-614.

166.    Victory Mitsubishi did not send Plaintiffs the required notices 10 days before attempting to resell the vehicle.

167.    Victory Mitsubishi has in fact kept the vehicle for their own use and purposes, in an attempt to thwart and circumvent the notice and sale provisions of NY UCC 9-611-601, et seq.

168.    Victory Mitsubishi's repossession and disposition of the vehicle was thus not commercially reasonable.

169.    Victory Mitsubishi's repossession and disposition of the vehicle thus was not in accordance with the mandates of NY UCC 9-611-601, et seq.

170. As a result of their failure to provide the required statutory notices, or to act in accordance with in accordance with the mandates of NY UCC 9-611-601, et seq., Victory Mitsubishi is obligated to Plaintiffs for 10% of the purchase price of the vehicle plus all finance

charges on the RISC, pursuant to NY UCC § 9-625.

<b>Count IX</b>

<b>Violations of New York General Business Law § 349<br>by Victory Mitsubishi</b>

171.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

172.    Under New York General Business Law ("GBL") § 349, deceptive acts or practices in the conduct of any business conducted in the State of New York are unlawful.

173.    Victory Mitsubishi's actions in inducing Plaintiffs, both of whom are consumers to purchase a car and then preparing forged loan documents and forging that consumer's signature to it, submitting false and fabricated credit applications to finance companies, and obtaining Consumer Reports on consumers through false and fraudulent means, violated GBL § 349 by falsely and deceptively forcing loans on consumers without consent.

174.    Victory Mitsubishi has caused Plaintiffs to suffer actual economic injury in the form lost money from a down payment they made, lost personal property, loss of a vehicle they purchased, and alternative transportation expenses, as well as from the impacts of multiple unauthorized credit inquiries into their credit profile.

175.    By and through their acts, omissions, concealments, and misrepresentations, Defendants violated GBL § 349 with materially misleading and consumer-oriented deceptive acts and practices, with a broad impact on consumers at large, and have done so knowingly or willfully.

176.    As a direct and proximate result of Victory Mitsubishi's deceptive acts and practices, committed in violation of GBL §349, Plaintiffs were also damaged in that they, among other things, suffered fear, stress, anxiety and difficulty sleeping, and suffered monetary damages

23

as set forth above.

177.    Plaintiffs claim all damages to which they are entitled arising from Defendants' violations of GBL § 349.

178.    Defendants' egregious acts justify the imposition of punitive damages.

**Prayer for Relief**

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter a Judgment:

1.    Declaring that Defendants' conduct complained of herein violates Plaintiffs' rights under the TILA, FCRA, EOCA, and state law;

2.    Enjoining Defendants from reporting to credit agencies that Plaintiffs failed to honor the terms of any loan agreement;

3.    Directing Defendants to pay Plaintiffs actual damages in an amount to be determined by a jury;

4.    Directing Defendants to pay Plaintiffs statutory damages as provided under the TILA, 15 U.S.C. § 1640, and FCRA, 15 U.S.C. § 1681, *et seq.*;

5.    Directing Defendant Victory Mitsubishi to pay Plaintiffs statutory damages as provided under NY UCC §9-625.

6.    Directing Defendants to pay Plaintiffs civil penalties as provided under New York General Business Law § 349;

7.    Directing Defendants to pay Plaintiffs punitive damages in an amount to be determined by a jury;

8.    Awarding Plaintiffs reasonable attorney fees, costs and disbursements of this action;

9.    Granting such other and further relief as this Court deems just and proper.

**Jury Demand**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated: Brooklyn, New York
       July 11, 2025

                                   Respectfully submitted,
                                   Bromberg Law Office, P.C.

                                By: /s/ *Brian L. Bromberg*
                                     Brian L. Bromberg
                                     One of Plaintiff's Attorneys

<u>Attorneys for Plaintiff</u>

Brian L. Bromberg
Bromberg Law Office, P.C.
352 Rutland Road #1
Brooklyn, New York 11225
Tel: (212) 248-7906
Email: brian@bromberglawoffice.com

Thomas R. Breeden
Thomas R. Breeden, P.C.
10326 Lomond Drive
Manassas, Virginia 20109
Tel: (703) 361-9277
Email: trb@tbreedenlaw.com
(to be admitted *pro hac vice*)