```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
JOEL S. POLANCO, et al.,                                               :
                                                                       :
                                                                       :
                              Plaintiffs,                              :
                                                                       :         25-cv-2410 (LJL)
              -v-                                                      :
                                                                       :         OPINION AND ORDER
                                                                       :
SPARTAN AUTO GROUP LLC                                                 :
d/b/a VICTORY MITSUBISHI, et al.,                                      :
                                                                       :
                              Defendants.                              :
                                                                       X
-----------------------------------------------------------------------
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/6/2025

LEWIS J. LIMAN, United States District Judge:

Defendants Spartan Auto Group LLC d/b/a Victory Mitsubishi ("Spartan") and individual defendants Chris Orsaris ("Orsaris"), Mark Vanable ("Vanable"), Jamal Mohammad ("Mohammad") and Tazman Nelson ("Nelson") (collectively the "Spartan Individual Defendants" and with Spartan, the "Spartan Defendants") move, pursuant to Section Four of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, for an order compelling arbitration and staying these proceedings. *See* Dkt. No. 54.

For the following reasons, the motion to compel is granted in part and denied in part.

## BACKGROUND[1]

Spartan is a New York limited liability company which operates a car dealership in the Bronx, New York. Dkt. No. 35 ¶ 4.[2] Plaintiffs Joel S. Polanco ("Polanco") and Mauricio A.

---

[1] On a motion to compel arbitration, the Court "consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks and citations omitted).

[2] Orsaris is the owner and chief executive officer of Spartan and Vanable, and Mohammad and Nelson are employees of Spartan. Dkt. No. 35 ¶¶ 5, 7, 9, 11.

Balbuena Jiminez ("Jiminez" and with Polanco, "Plaintiffs") are New York residents. *Id.* ¶¶ 2–3. On March 27, 2024, Plaintiffs purchased a used 2020 BMW 3 Series car (the "Vehicle") from Spartan. *Id.* ¶ 42. Plaintiffs purchased the Vehicle on credit. *Id.* ¶¶ 41–42. Plaintiffs signed a Retail Installment Sales Contract ("RISC") for the purchase of the Vehicle. *Id.* ¶¶ 41–42, 46, 48. Plaintiffs agreed to the terms of the sale, signed the paperwork reflecting those terms, and received possession of the Vehicle. *Id.* ¶ 48. Spartan told Plaintiffs that they were approved for financing. *Id.* ¶ 42.

Defendant Capital One, National Association d/b/a Capital One Auto Finance ("Capital One") is a national bank located in McLean, Virginia. *Id.* ¶ 19. On March 27, 2024, the date of the sale, Spartan attempted to assign the RISC to Capital One and listed Capital One as the lien holder to the Vehicle when registering the Vehicle in Plaintiff's name. *Id.* ¶¶ 45, 47. After receiving the attempted assignment, however, Spartan did not send Capital One the documentation which Capital One required to finalize the assignment. *Id.* ¶ 49. Capital One never accepted the assignment of the RISC and the rights were not assigned. *See* Dkt. No. 35-6; Dkt No. 58-1 ¶ 4.[3]

On or about April 29, 2024, after the sale of the Vehicle was consummated and without Polanco's permission, Spartan accessed Polanco's consumer credit reports from Trans Union, Experian and Equifax and submitted a request to Capital One for Capital One to access Polanco's consumer credit reports from Trans Union, Experian, and Equifax. Dkt. No. 35 ¶¶ 52–53, 67. Polanco's consumer credit reports, containing the record of the inquiry from Capital

---

[3] While Plaintiffs' complaint describes Capital One as "revok[ing]" its acceptance, *see* Dkt. No. 35 ¶ 50, implying that it had been accepted in the first instance, this implication is directly contradicted by a sworn declaration submitted by Capital One, *see* Dkt. No. 58-1 ¶ 4, and an exhibit attached to the complaint by Plaintiffs themselves. *See* Dkt. No. 35-6 at 1 ("Accordingly, the Vehicle Contract and the rights thereunder have not been assigned.").

2

One, were then disseminated to Bank of America, SYNCB/Amazon PLCC, and Citibank, N.A. and Best Buy. *Id.* ¶¶ 55–57. As a result of the credit inquiries into his credit profile, Polanco suffered a decrease in his credit score. *Id.* ¶ 66.

On or about April 1, 2024, Spartan contacted Polanco and demanded that he sign new deal documents if he did not want Spartan to repossess the Vehicle. *Id.* ¶ 68. Spartan then began demanding that Polanco return the Vehicle. *Id.* ¶ 69. On April 26, 2024, Spartan threatened to report the Vehicle as stolen if Polanco did not return it by the next day. *Id.* ¶ 70. Spartan claimed that the loan had been "declined" by the bank and that Spartan was a "car dealership" that did not "extend financing." *Id.* ¶¶ 72, 76. When Polanco informed Spartan that he intended to honor its obligations under the RISC and asked to whom he should send his payments, *id.* ¶¶ 75, 79, Spartan responded that no loan had been finalized and that Plaintiffs should make no payments, *id.* ¶ 76. On May 9, 2024, Spartan and Orsaris sent Plaintiffs a letter acknowledging that the Vehicle had been sold to Plaintiffs and that the financing was finalized. *Id.* ¶ 82. The letter acknowledged that Capital One had refused to fund the loan and that Spartan had purchased the loan from Capital One. Dkt. No. 35-6. Spartan and Orsaris claimed in the letter that Plaintiff had breached the RISC by failing to make the first payment and gave Plaintiffs until May 20, 2024, to cure the missed payment. Dkt. No. 35 ¶¶ 84–85; Dkt. No. 35-6 at 2.

On May 15, 2024, without telling Polanco where to send his payment and without waiting until the end of the cure date, Spartan caused the Vehicle (with Polanco's personal belongings in it) to be seized from Polanco's property. Dkt. No. 35 ¶¶ 86, 89. No notice of repossession was given to Plaintiffs. ¶ 101.

## PROCEDURAL HISTORY

Plaintiffs initiated this action by complaint filed on March 24, 2025. Dkt. No. 1. Plaintiffs asserted claims under the Fair Credit Reporting Act (15 U.S.C. §§ 1681b(f) and

3

1681m) against Spartan and Capital One and under the Truth in Lending Act (15 U.S.C. § 1601, *et seq.*) and Equal Credit Opportunity Act (15 U.S.C. § 1691(d)(2)) against Spartan. Plaintiffs also asserted claims against Spartan Defendants for common law fraud and conversion, and against Spartan for violations of the Uniform Commercial Code and New York General Business Law § 349. Dkt. No. 35 ¶ 1.

On July 11, 2025, Plaintiffs filed this amended complaint. Dkt. No. 35. The amended complaint asserts the same claims as the initial complaint.[4]

On August 29, 2025, the Spartan Defendants filed this motion to compel arbitration. Dkt. No. 54. The Spartan Defendants also filed a memorandum of law in support of the motion and the declaration of counsel. Dkt. Nos. 55–56. On September 4, 2025, Plaintiffs filed a response to the motion. Dkt. No. 57. On September 10, 2025, Capital One filed a memorandum of law in opposition to the motion to compel. Dkt. No. 58. The Spartan Defendants filed their reply memorandum of law in further support of the motion to compel on September 19, 2025. Dkt. No. 59.[5]

## DISCUSSION

The Spartan Defendants move to compel arbitration of all claims in this action pursuant to the RISC and to stay further proceedings pending the outcome of the arbitration. Dkt. Nos. 54–55. Plaintiffs join in the motion and ask that the motion be granted as to all parties, including Capital One. Dkt. No. 57. Capital One opposes the motion to compel as to itself. Dkt. No. 58.

---

[4] On June 2, 2025, Capital One filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 25. The Court denied that motion as moot based on the Amended Complaint. Dkt. No. 34.

[5] On July 25, 2025, Capital One filed a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 43. By order of July 31, 2025, the Court stayed the time to respond to that motion pending its determination of this motion to compel. Dkt. No. 50.

I.      **Arbitration Between Plaintiffs and Spartan Defendants**

The FAA provides that a written agreement to arbitrate disputes arising from a contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (because arbitration agreements stand "on equal footing with other contracts," courts must "enforce them according to their terms"). When a contractual party "fail[s], neglect[s], or refus[es] ... to arbitrate" under the terms of an arbitration agreement, another party may petition the court for an order compelling arbitration. 9 U.S.C. § 4; *see Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

"The Court's role on a motion to compel arbitration is 'narrow.'" *Lonstein L. Off., P.C. v. Evanston Ins. Co.*, 2022 WL 72302, at *8 (S.D.N.Y. Jan. 6, 2022) (quoting *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 139 (3d Cir. 1998)).

> [F]irst, [the Court] must "determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration."

*Bristol v. Securitas Sec. Servs. USA, Inc.*, 597 F. Supp. 3d 574, 578 (S.D.N.Y. 2022) (quoting *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)).

"[T]he Court applies a 'standard similar to that applicable to a motion for summary judgment'" in deciding a motion to compel arbitration under the FAA. *Cornelius v. Wells Fargo Bank, N.A.*, 2020 WL 1809324, at *4 (S.D.N.Y. Apr. 4, 2020) (quoting *Zhu v. Hakkasan NYC*

5

*LLC*, 291 F. Supp. 3d 378, 386 (S.D.N.Y. 2017)).  As on a motion for summary judgment, the parties may submit documents in support or opposition of the motion, and the court "consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party."  *Myer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017).

The claims as between Plaintiffs and the Spartan Defendants are arbitrable.  Plaintiffs and Spartan are parties to the arbitration provision of the RISC.  Dkt. No. 56-1.  The arbitration provision provides in pertinent part as follows:

### ARBITRATION PROVISION

**PLEASE REVIEW—IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**

**1.    EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

**2.    IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**

**3.    DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not be court action.  If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute.  Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and

> not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association (www.adr.ord) or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or vising its website.
>
> …

Dkt. No. 56-1 at 5.

It is not disputed that Plaintiffs and Spartan agreed to arbitrate the claims arising between them and out of the RISC and the purchase of the Vehicle, that Plaintiffs' claims against the Spartan Defendants fall within the scope of the arbitration agreement, and that all of the claims are arbitrable. Moreover, the arbitration provision expressly gives Spartan the right to force Plaintiffs to arbitrate the claims Plaintiff has against Spartan's employees and agents. The motion to compel thus is granted to the extent that Spartan seeks to arbitrate all of the claims against it or the Spartan Defendants.

## II.     Motion to Compel Arbitration Against Capital One

Spartan, joined by Plaintiffs, also moves to compel Capital One to arbitrate under the arbitration provision in the RISC. Capital One claims it was not a party to the RISC and was not assigned the RISC and therefore cannot be bound by its arbitration provision. Dkt. No. 58 at 3–6. It relies on the allegations of the Amended Complaint that Capital One "declined to accept Victory Mitsubishi's attempt to assign the loan to them," Dkt. No. 35 ¶ 73, and Spartan's admission in a letter to Jiminez attached to the Amended Complaint that Capital One had decided not to fund the loan and that as a result, "the Vehicle Contract and the rights thereunder have not been assigned," Dkt. No. 35-6 at 1. It also relies upon the declaration of its Department Operations Manager, Giovanni Macias. Dkt. No. 58-1. Macias swears that: (1) Capital One did not accept assignment of the RISC, *id*. ¶ 4; (2) Plaintiffs do not have and have not had any account with Capital One or payment obligations to Capital One related to the Vehicle, *id*. ¶ 5;

(3) Plaintiffs have not made any payments to Capital One related to the Vehicle, *id*.; and (4) Capital One has never possessed a security interest or any ongoing legal or financial interest in the Vehicle, *id*. ¶ 6.

Spartan relies on language in the RISC that states: "Seller assigns its interest in this contract to CAPITAL ONE AUTO FINANCE." Dkt. No. 55-1 at 6. It argues that Capital One is bound by the Arbitration Provision as an assignee. Dkt. No. 55 at 11. It also asserts that Capital One should be bound by principles of estoppel because it "accessed Plaintiffs' credit reports, approved the credit applications, and consented to the assignment." Dkt. No. 55 at 17. It asserts that "[b]ut for Capital One's initial approval of Plaintiff's [sic] credit application, Plaintiff would not have been able to purchase the vehicle, and the parties would not have executed the RIC." *Id*.

"Arbitration is a creature of contract; a party therefore cannot be required to submit to arbitration any dispute which it has not agreed to submit." *Doe v. Trump Corp.*, 6 F.4th 400, 412 (2d Cir. 2021); *see Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("'[A]rbitration is a matter of contract.'") (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). The threshold question with respect to every motion to compel arbitration is whether the parties against whom an arbitration clause is sought to be enforced has agreed to arbitration. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists"). "[T]hough the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003). As the moving parties, the Spartan Defendants bear the initial burden of demonstrating that Capital One

8

agreed to arbitrate. *See Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order) (citing cases); *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 693 (S.D.N.Y. 2015); *Rothstein v. Fung*, 2004 WL 1151568, at *1 (S.D.N.Y. May 24, 2004).

Under New York law, "a valid arbitration agreement only requires proof that the parties intended to be bound by such an agreement." *Beautyko, LLC v. FedEx Ground Package Sys., Inc.*, 2015 WL 224361, at *3 (S.D.N.Y. Jan. 16, 2015). There is no requirement that the agreement be in writing. *Id*.

Spartan has offered no evidence that Capital One intended to be bound by the RISC either as a party to the RISC and its Arbitration Provision or as an assignee. The parties to the RISC are identified on its first page only as Plaintiffs and Spartan. Dkt. No. 55-1. The signatories are identified as Plaintiffs and Spartan. *Id*. at 6.

Although the RISC states "Seller assigns its interest to this contract to CAPITAL ONE AUTO FINANCE," Dkt. No. 55-1 at 6, unilateral action of Spartan cannot impose contractual obligations on Capital One. *See Doe*, 6 F.4th at 412 ("Arbitration is a creature of contract; a party therefore cannot be required to submit to arbitration any dispute which it had not agreed to submit."). Capital One did not agree to succeed to any of Spartan's rights and obligations under the RISC. To the contrary, there is evidence before the Court that it was Spartan who continued to exercise and attempt to exercise rights under the RISC, signaling that the parties had never agreed to a succession of such rights. Dkt. No. 35 at 84–85; Dkt. 35-6 ("Accordingly, the Vehicle Contract and the rights thereunder have not been assigned.").

However, there are limited circumstances in which "[a] court upon motion may compel a non-signatory to an arbitration agreement to participate in an arbitration." *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 588–89 (S.D.N.Y. 2024). The Second Circuit has

9

recognized five theories for requiring non-signatories to arbitrate: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995). *See also Oriental Com. & Shipping Co. v. Rosseel, N.V.*, 609 F. Supp. 75, 78 (S.D.N.Y. 1985) ("It is within the province of this Court to determine whether Oriental S.A., although not formally a party to the arbitration agreement, should be made a party to the arbitration proceeding in addition to Rosseel and Oriental U.K."). District courts are instructed to "narrowly construe these five theories, each of which is governed by ordinary principles of contract and agency law." *Boroditskiy v. European Specialties LLC*, 314 F. Supp. 3d 487, 493 (S.D.N.Y. 2018).

Spartan argues that Capital One should be compelled to arbitrate under principles of equitable estoppel. Under the doctrine of equitable estoppel, arbitration is required between a signatory and a non-signatory where

> the relationships of persons, wrongs and issues, in particular whether the claims that the nonsignatory sought to arbitrate were intimately founded in and intertwined with the underlying contract obligations. . . . In this way, the circuits have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.

*Choctaw Generation Ltd. Partnership v. American Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001). And "'In addition to the 'intertwined' factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.'" *Id.* (brackets omitted) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008)).

Here, Spartan, as signatory, seeks to compel Capital One, a non-signatory. Courts have acknowledged that the "distinction between cases where nonsignatories seek to compel

10

arbitration against signatories and cases where . . . signatories seek to compel arbitration against nonsignatories is significant." *Serebryakov v. Golden Touch Transp. of NY, Inc.*, 2015 WL 1359047, at *8 (E.D.N.Y. Mar. 24, 2015). Arbitration is a matter of contract that requires agreement by both parties. When a non-signatory compels arbitration against a signatory, the signatory that is being estopped from avoiding arbitration had already entered into written arbitration agreements, albeit with the affiliates of the non-signatory and not the non-signatory itself. The same logic does not apply when the request to compel is as against a non-signatory, who had never entered such agreement, "regardless of how closely affiliated that nonsignatory is with another signing party." *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F. 3d 58, 62 (2d Cir. 2001). *See also Thomson-CSF, S.A.*, 64 F.3d at 779. As applied here, at no point did Capital One indicate a willingness to arbitrate with Spartan, or as a matter of fact, arbitrate any dispute at all.

However, courts have also recognized that there could be a limited basis for estoppel when a signatory seeks to compel a non-signatory to arbitrate. *See Orange Chicken, L.L.C. v. Nambe Mills, Inc.*, 2000 WL 1858556, at *5 (S.D.N.Y. Dec. 19, 2000) ("The Second Circuit has recognized two branches of estoppel cases," including "when a signatory to an arbitration agreement seeks to bind a non-signatory to it") (internal quotation marks and citations omitted). In particular, a non-signatory may be compelled to arbitrate under the limited circumstances that it has derived "direct benefit" under the agreement containing the arbitration clause. *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999).[6] However, it

---

[6] A number of other circuits have endorsed this direct benefit theory of equitable estoppel against non-signatories. *See, e.g.*, *Griswold v. Coventry First LLC*, 762 F. 3d 264, 272 (3d Cir. 2014); *Noble Drilling Services, Inc. v. Certex USA, Inc.*, 620 F. 3d 469, 473 (5th Cir. 2010); *Ribadeneira v. New Balance Athletics, Inc.*, 65 F. 4th 1, 22–23 (1st Cir. 2023).

is clear from the evidence before this Court that Capital One had not derived any benefits from the RISC.  Capital One never received any payments and Plaintiffs never had an obligation to.  Capital One has never possessed a security interest in the Vehicle.  Dkt. No. 58-1 ¶ 4–6.  *See Trina Solar US, Inc. v. Jasmin Solar Pty Ltd.*, 954 F.3d 567, 572 (2d Cir. 2020) ("The nonsignatory beneficiary must actually invoke the contract to obtain its benefit…").  Even when a non-signatory party gains a benefit, the benefit must be traced directly to the agreement.  *Id.*  Here, Capital One had not received anything to call a benefit, let alone one that is traceable to the RISC.

## CONCLUSION

The motion to compel arbitration is GRANTED as to Plaintiffs and DENIED as to Capital One.

The Clerk of Court is respectfully directed to close Dkt. No. 54.

SO ORDERED.

Dated: November 6, 2025
       New York, New York

LEWIS J. LIMAN
United States District Judge